FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 04, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY M., | No. 2:18-CV-00130-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 18. Attorney Dana C. Madsen represents Timothy M. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on May 28, 2015, Tr. 83-84, alleging disability

ORDER GRANTING PLAINTIFF'S MOTION - 1

since April 1, 2015, Tr. 221, 228, due to multiple mental health issues, anxiety, anhedonia, persistent depressive disorder, antisocial personality disorder, left knee pain, meralgia paresthtica, memory issues, vision problems, and bursitis, Tr. 270. The applications were denied initially and upon reconsideration. Tr. 151-54, 160-72. Administrative Law Judge (ALJ) Caroline Siderius held a hearing on February 16, 2017 and heard testimony from Plaintiff, medical expert Charles Cooke, M.D., and vocational expert Sharon Welter. Tr. 38-82. The ALJ issued an unfavorable decision on April 5, 2017. Tr. 17-32. The Appeals Council denied review on February 20, 2018. Tr. 1-5. The ALJ's April 5, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on April 20, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 46 years old at the alleged date of onset. Tr. 221. The highest grade Plaintiff completed was the eleventh. Tr. 271. His reported work history includes the jobs of construction worker, delivery/truck driver, food service worker, landscaper, and welder. Tr. 250, 272. When applying for benefits Plaintiff reported that he stopped working on April 1, 2015 because of his conditions. Tr. 270.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in significant numbers in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a

finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On April 5, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from April 1, 2015 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2015, the alleged date of onset.  Tr. 17.

At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the knee; sleep apnea; depressive disorder; and anxiety disorder.  Tr. 19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 20.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined that he could perform a range of light work with the following limitations:

> [T]he claimant can lift or carry 20 pounds occasionally and frequently. He can stand or walk 6 hours in an 8-hour workday, with an option to sit or stand at will.  The claimant can frequently climb sta[i]rs or ramps, but may not climb ladders, ropes, or scaffolds.  The claimant may occasionally kneel, stoop, and crawl.  The claimant may not operate heavy machinery and equipment, but may operate motor vehicles frequently.  He may not be exposed to unprotected heights.  The claimant may have frequent exposure to wetness or humidity, but must avoid concentrated exposure to pulmonary irritants.  He may frequently operate foot controls.  The claimant can perform simple, repetitive tasks, and occasional detailed work.  He may have superficial, brief contact with the general public and coworkers.

Tr. 22.  The ALJ identified Plaintiff's past relevant work as welder, irrigation

system installer, automobile detailer, construction worker, cook, and forest firefighter and found that he could not perform this past relevant work. Tr. 30.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of mail office clerk and office helper. Tr. 31. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from April 1, 2015, through the date of the ALJ's decision. *Id.*

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by failing to properly weigh Plaintiff's symptom statements and failing to properly weigh the medical opinions in the record. ECF No. 14. Additionally, Plaintiff argues that these errors were not harmless, and the proper remedy is to remand the matter for an immediate award of benefits. *Id.*

## DISCUSSION[1]

### 1.  Plaintiff's Symptom Statements

Plaintiff argues that the ALJ improperly discredited his symptom claims.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

ECF No. 14 at 14-15.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 26-27. Specifically, the ALJ found that Plaintiff's statements were not supported by the medical evidence and that they were inconsistent with his reported activities. Tr. 27.

Plaintiff's briefing only addressed the ALJ's second reason, that his statements were inconsistent with his reported activities. ECF No. 14 at 14-15. A claimant's daily activities may undermine a claimant's symptom statements if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ specifically addressed this reason in the following paragraph:

> The claimant's reported activities during the period of disability alleged are inconsistent with his allegations of a disabling condition in his back. His medical caregiver Megan McIntyre, PAC, did not address any sitting or walking restrictions, but felt that he was limited to sedentary work, as discussed below (5F). Only three months earlier, the claimant admitted to riding dirt bikes "a lot," despite the presence of some

myalgias in his right leg for a long time, before that (2F/11). The claimant takes care of animals and would like to operate a farm someday (2E; 4F/2; 17F; 18F). His physical examinations have been generally unremarkable, particularly after his right knee surgery.

Tr. 27.

On February 9, 2015, Plaintiff reported myalgias in the right leg for a long time and stated that he rode dirt bikes a lot. Tr. 352. This report of riding dirt bikes predates the alleged date of onset. Additionally, upon application, Plaintiff stated that motocross was one of his hobbies, but he now needed assistance to partake in his hobbies. Tr. 262. Therefore, this is not inconsistent with Plaintiff's symptom statements after application.

The ALJ's reference to Plaintiff's desire to operate a farm is not representative of Plaintiff's actual activities. When applying for benefits, Plaintiff stated that he feeds, waters, and pets his dog. Tr. 259. On May 4, 2015, Plaintiff reported to John Arnold, Ph.D. that his daily activities include, letting the dogs out, feeding the chickens, and focusing on the farm animals. Tr. 369. The ALJ's citation to exhibits 17E and 18E are counseling records from 2016 in which Plaintiff identified part of his goal as "trying to build a farm in Deer Park so I have a place to live." Tr. 543, 552-53, 556-57, 560, 562, 566, 577, 589-90, 593, 595-96, 598, 600, 603, 605-06, 608, 610, 612, 615. However, the same counseling records indicate that he was homeless or "couch-surfing" for much of the same time period. Tr. 456, 552, 554-55, 591, 598, 601, 613, 618. The ALJ failed to identify how feeding his dog and the chickens and hoping to one day operate a farm is inconsistent with his symptom statements.

The ALJ has failed to demonstrate how Plaintiff's reported activities were inconsistent with his symptom statements. Therefore, this does not meet the specific, clear and convincing standard.

Plaintiff's briefing failed to address the ALJ's determination that his symptom statements were not supported by the medical evidence. ECF Nos. 14,

19. Regardless, the Ninth Circuit has found that a lack of supporting medical evidence alone is insufficient to reject a claimant's symptom statements. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the sole ground for rejecting a claimant's credibility). Therefore, the ALJ failed to set forth specific, clear and convincing reasons for rejecting Plaintiff's symptom statements. The case is remanded for the ALJ to properly address such statements.

**2.    Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by David G. Knox, M.D., Thomas Genthe, Ph.D., John Arnold, Ph.D., the medical expert called at the hearing, the state agency medical consultant, and the state agency psychological consultants. ECF No. 14 at 15-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.* When a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when a treating or examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

Medical expert Charles Cooke, M.D. testified at the hearing that Plaintiff could lift and carry eleven to twenty-one pounds frequently and occasionally. Tr. 49-50. He could stand and walk four hours at a time for a total of six hours. Tr. 50. He could operate foot controls bilaterally on a frequent basis. Tr. 51. He could climb ramps and stairs frequently, but never climb ladders and scaffolds. *Id*. He should avoid unprotected heights completely. *Id*. He could be exposed to moving mechanical parts occasionally and frequently operate a motor vehicle. *Id*. Exposure to humidity and wetness he could tolerate frequently. *Id*. Exposure to dust, fumes, and pulmonary irritants should be limited to occasionally. *Id*. He could tolerate loud noises. Tr. 52.

On December 8, 2015, the state agency medical consultant Guillermo Rubio, M.D. opined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk for six hours in an eight-hour day, sit six hours in an eight-hour day, occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl, and avoid concentrated exposure to extreme cold, vibrations, and hazards. Tr. 128-29.

On September 24, 2015, the state agency psychological consultant Patricia Kraft, Ph.D. opined that there was no evidence to support any limitation in understanding or memory. Tr. 95. She opined that Plaintiff was capable of carrying out simple and well learned complex tasks at an appropriate pace for two hour increments with scheduled break periods, and his impairments had an occasional impact on sustained concentration, persistence, and pace and attention and attendance at work, "but will not prevent [Plaintiff] from sustained, productive work." Tr. 96. She further opined that Plaintiff would do best to work away from the general public and "with more infrequent and superficial coworkers and supervisor contact." *Id*. She stated that he would occasionally struggle with criticism from supervisors but would be able to adjust to redirection appropriately. *Id*. She also stated that Plaintiff would be able to adjust to routine changes and

learn new tasks with explanation and exposure. Tr. 97. On December 9, 2015, the state agency psychological consultant Jan Lewis, Ph.D. penned the same opinion. Tr. 130-32

On August 4, 2014, Dr. Genthe examined Plaintiff and opined that he had a "None or Mild" limitation in eleven out of thirteen areas of functioning and a moderate limitation in the remaining two areas. Tr. 338. He concluded that Plaintiff would benefit from some mental health counseling and psychotropic medication management, but that such services "should not prevent his [sic] from pursuing everyday work related tasks or activities commensurate with his level of education and training. Tr. 339.

On May 4, 2015, Dr. Arnold examined Plaintiff and opined that he had a marked limitation in four areas of mental functioning, a moderate limitation in seven areas of mental functioning, and none or mild limitation in two areas of mental functioning. Tr. 370.

In weighing the medical opinion evidence, the ALJ gave great weight to the opinions of nonexamining physicians, including the medical expert Dr. Cooke, the state agency medical consultant Dr. Rubio, and the state agency psychological consultants Dr. Kraft and Dr. Lewis. Tr. 27-29. The ALJ then gave partial weight to the opinion of examining psychologist, Dr. Genthe. Tr. 28. She gave little weight to the opinion of examining psychologist Dr. Arnold because (1) the opinion was based on Plaintiff's self-reports, (2) it was inconsistent with the opinion of Dr. Genthe, and (3) it is unclear whether Dr. Arnold reviewed Plaintiff's medical records prior to making his assessment. Tr. 29. Dr. Knox did not provide a medical source opinion discussion of Plaintiff's functional abilities or limitations. Tr. 367.

Plaintiff's argument does not address the ALJ's rationale for the weight he gave the opinions. ECF No. 14 at 16-17. Instead, he argues the following:

> The only exhibits in the case which would be different than the treatment records and the finding of Thomas Genthe, Ph.D. and John Arnold, Ph.D. would be reports of non-examining, non-treating doctors. It is not known what records these doctors would have reviewed in filling out the checklist forms that were completed. Those checklist forms filled out by non-examining, non-treating doctors do not constitute substantial evidence.

*Id*. Defendant argues that Plaintiff's argument fails to specifically address the reasons the ALJ gave for weight provided to the opinions, and, therefore, waived the issue. ECF No. 18 at 9 *citing Carmickle*, 533 F.3d at 1161. The Court agrees. Plaintiff failed to challenge the reasons the ALJ provided for rejecting the opinions of examining providers. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed.*

---

[2] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to Fed. R. App. P. 28(a)(8)(A)

*Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, he waived the argument.

Furthermore, Plaintiff's assertion that "[i]t is not known what records these doctors would have reviewed in filling out the checklist forms that were completed," ECF No. 14 at 17, is not supported by the record. The opinions of Dr. Rubio, Dr. Kraft, and Dr. Lewis are preceded with a list of evidence available to them at the time of their opinions. Tr. 86-89, 120-24. Additionally, Dr. Cooke testified that he had received and reviewed through Exhibit 21F. Tr. 42. The administrative record ends on page four of Exhibit 21F. Tr. 636. Therefore, Dr. Cooke had all the medical evidence available to him at the time of his opinion. Plaintiff's assertion is unsupported.

## REMEDY

Plaintiff requests the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF No. 14 at 17-18.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, we remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even when the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

Here, Plaintiff's assertion that the case should be remanded for an immediate award of benefit fails to address how the three prongs of the credit-as-true rule are

satisfied in this case. ECF No. 14 at 17-18. Therefore, the Court refuses such an award. However, this Court has found that the ALJ erred in addressing Plaintiff's symptom statements. Therefore, a remand is appropriate for the ALJ to address Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding evidence and call a psychological expert and a vocational expert to testify on remand.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part,** and the matter is remanded to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED June 4, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE